FILED

2017 Jun-08  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRCIT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **VALERIE BETHUNE,** | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| v. | ) | |
| | ) | JURY DEMAND |
| **MERCEDES-BENZ U.S.** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| DEFENDANT. | ) | |

---

## COMPLAINT

---

## I. JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4). This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991", as amended. The jurisdiction of this court is invoked to secure protection for and to redress the deprivation of rights secured by 42 U.S.C. § 2000e *et seq.*, providing injunctive and other relief against gender discrimination, and retaliation in employment.

## II. PARTIES

2.      Plaintiff, Valerie Bethune, ("Plaintiff") is a female citizen of the United States and is a resident of Jacksonville, Alabama.

3.      Defendant, Mercedes-Benz U.S. International, Inc., ("Defendant") is a domestic corporation. The Defendant is engaged in business in Alabama.

4.      At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce and has fifteen (15) or more employees and is an employer within the meaning of 42 U.S.C. § 2000e (b), (g) and (h).

## III. ADMINISTRATIVE PROCEDURES

5.      Plaintiff hereby adopts and realleges paragraphs one (1) through four (4) herein above as if fully set forth herein.

6.      Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination by his employer, Defendant.

7.      This action seeks to redress unlawful employment practices resulting from the acts of Defendant, their agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of discriminating against and/or retaliating against the Plaintiff and others similarly situated on account of

gender discrimination, and retaliation.

8.   On February 10, 2016, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1).

9.   Plaintiff's Dismissal and Notice of Rights was mailed by the EEOC to the Plaintiff on March 10, 2017, and Plaintiff filed suit within ninety (90) days of receipt of her Dismissal and Notice of Rights.  (Exhibit 2).

10.   Administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV.  STATEMENT OF PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

11.   Plaintiff hereby adopts and realleges paragraphs one (1) through ten (10) herein above as if fully set forth herein.

12.   Plaintiff, Valerie Bethune is female.

13.   Plaintiff began working for the Defendant on or about June 25, 2012 as a Maintenance Team Member (Maintenance Technician-Electrical and Mechanical).

14.   Plaintiff was terminated on or about October 23, 2015.

15.   Plaintiff was originally hired to work shop 166, but in or around 2013 Plaintiff was moved to shop 205.

16.    When Plaintiff moved to shop 205, she was the only female employee.

17.    The male employees in shop 205 harassed Plaintiff and treated Plaintiff differently because she is female.

18.    The male employees refused to help train Plaintiff and would blame her for issues that were not Plaintiff's fault.   The male employees would not communicate with Plaintiff and were hostile toward Plaintiff.

19.    In or around June 2014, Plaintiff complained to her supervisor and Group Leader, Patrick Roth.

20.    Plaintiff was treated differently than the male employees and her robot was taken away.

21.    Plaintiff complained that she was the only woman in that part of the plaint and that she was being treated differently.

22.    In or around June 2014, Plaintiff also complained to Human Resources and spoke with Zina Cooper, Team Relations Manager and Teresa Works.

23.    Plaintiff complained to Ms. Cooper and Ms. Works that she was being treated differently because she is a woman and that she was working in a hostile environment.

24.    In or around June 2014, Plaintiff also complained to Wade Smith, her

former boss.

25.    Plaintiff complained to Mr. Smith that she was being treated differently because she is a woman.  Plaintiff believed Mr. Smith talked to her current supervisor, Patrick Roth, about her complaints of discrimination.

26.    After Plaintiff's complaints of gender discrimination in or around June 2014, she was unjustly disciplined and written up.

27.    The write up was later withdrawn because it was unjust and retaliatory.

28.    Ms. Cooper in Human Resources informed Plaintiff that the write up would be withdrawn, but would still be in her file as a "note" not a corrective action.

29.    Also after Plaintiff complained to her supervisor Mr. Roth, he gave her a bad performance evaluation.

30.    Plaintiff had never received a bad performance evaluation, as her performance was good.  Plaintiff's performance was so good that she was one of two Mechanical Joining Specialist sent to Germany.

31.    Plaintiff received a bad performance review in retaliation for her complaints.

32.    Plaintiff complained to Erick Tiefenthaler, Manager and Teresa Works, Human Resources about the bad review Mr. Roth gave her and informed

them that she received the bad review because of her complaints.

33.     Plaintiff's performance reviews were not changed, but notes were placed on her reviewed stating she was doing better.

34.     Mr. Roth left the company, and Plaintiff was given a new supervisor; however, Plaintiff's male co-workers continued to harass her and treat her differently because she is a woman.

35.     Plaintiff's male co-workers continued to falsely blame her for issues and make false statements about her performance.

36.     The discriminatory and hostile environment got worse and in or around August 2015, Plaintiff had medical issues and had to be off from work.

37.     Plaintiff returned to work after one week and her male co-workers started saying she was crazy and made fun of her.

38.     Plaintiff had been treated by one of the company's doctors and her private doctor.  Both doctors determined that Plaintiff was working in a hostile environment and requested Plaintiff be moved.

39.     Defendant's own EAP Psychologist, cited and reported to Defendant there was a need to move Plaintiff from the body shop due to the hostile work environment.

40.     Defendant did not follow the instructions of the EAP Psychologist and Plaintiff was not moved.

41.     In or around September 2015, Plaintiff was unjustly suspended when a male co-worker, Wesley Booth, screamed at her while they were working.

42.     Mr. Booth had been harassing Plaintiff for several months because of her gender.

43.     There was no reason for Mr. Booth to yell at Plaintiff and he did not treat the male employees in the same manner.

44.     Plaintiff asked Mr. Booth what was wring with him and why he was screaming at her.

45.     Mr. Booth continued to scream at Plaintiff.

46.     Plaintiff tried to stop Mr. Booth from screaming at her and when he would not stop, Plaintiff yelled back at him.

47.     Plaintiff did not get in Mr. Booth face, and Plaintiff's actions were not hostile.

48.     Plaintiff again asked to be moved to another area.

49.     Plaintiff was suspended for three weeks and no action was taken against Mr. Booth.

50.     After Plaintiff suspension, on or about October 23, 2015, she met with Team Relations Manager, Zina Cooper and Group Leader, Steve Slough.

51.     Plaintiff was asked to sign a document stating she used threatening, insulting and abusive language.

52. Plaintiff refused to sign the document because the allegations were false.

53. Later on or about October 23, 2015, David Olive from Human Resources called Plaintiff and terminated her for refusing to sign the document containing false accusation.

54. After Plaintiff's termination, she wrote a letter to the CEO, Jason Hoff, informing him that she would sign the document and put her response on the document.

55. Plaintiff was not rehired and was not allowed to sign the document with her response.

56. Plaintiff avers that Defendant has a history of discriminating against female maintenance employees in the body shop.

57. Kristie Garduno, female maintenance employee, moved to assembly from the body shop because of the discrimination, harassment and hostile environment.

58. Ms. Garduno filed an EEOC Charge, and the male employees that discriminated against Ms. Garduno, harassed Mr. Garduno, and created a hostile working environment are still employed with Defendant.

## COUNT ONE

## STATEMENT OF PLAINTIFF'S TITLE VII GENDER DISCRIMINATION/DISPARATE TREATEMENT CLAIMS/HOSTILE WORK ENVIRONMENT CLAIMS

59.     Plaintiff hereby adopts and realleges paragraphs (1) through fifty-eight (58) herein above as if fully set forth herein.

60.     Plaintiff, Valerie Bethune is female.

61.     Plaintiff began working for the Defendant on or about June 25, 2012 as a Maintenance Team Member (Maintenance Technician-Electrical and Mechanical).

62.     Plaintiff was terminated on or about October 23, 2015.

63.     Plaintiff was originally hired to work shop 166, but in or around 2013 Plaintiff was moved to shop 205.

64.     When Plaintiff moved to shop 205, she was the only female employee.

65.     The male employees in shop 205 harassed Plaintiff and treated Plaintiff differently because she is female.

66.     The male employees refused to help train Plaintiff and would blame her for issues that were not Plaintiff's fault.   The male employees would not communicate with Plaintiff and were hostile toward Plaintiff.

67.     In or around June 2014, Plaintiff complained to her supervisor and

Group Leader, Patrick Roth.

68.   Plaintiff was treated differently than the male employees and her robot was taken away.

69.   Plaintiff complained that she was the only woman in that part of the plaint and that she was being treated differently.

70.   In or around June 2014, Plaintiff also complained to Human Resources and spoke with Zina Cooper, Team Relations Manager and Teresa Works.

71.   Plaintiff complained to Ms. Cooper and Ms. Works that she was being treated differently because she is a woman and that she was working in a hostile environment.

72.   In or around June 2014, Plaintiff also complained to Wade Smith, her former boss.

73.   Plaintiff complained to Mr. Smith that she was being treated differently because she is a woman.  Plaintiff believed Mr. Smith talked to her current supervisor, Patrick Roth, about her complaints of discrimination.

74.   After Plaintiff's complaints of gender discrimination in or around June 2014, she was unjustly disciplined and written up.

75.   The write up was later withdrawn because it was unjust and retaliatory.

76.    Ms. Cooper in Human Resources informed Plaintiff that the write up would be withdrawn, but would still be in her file as a "note" not a corrective action.

77.    Also after Plaintiff complained to her supervisor Mr. Roth, he gave her a bad performance evaluation.

78.    Plaintiff had never received a bad performance evaluation, as her performance was good.  Plaintiff's performance was so good that she was one of two Mechanical Joining Specialist sent to Germany.

79.    Plaintiff received a bad performance review in retaliation for her complaints.

80.    Plaintiff complained to Erick Tiefenthaler, Manager and Teresa Works, Human Resources about the bad review Mr. Roth gave her and informed them that she received the bad review because of her complaints.

81.    Plaintiff's performance reviews were not changed, but notes were placed on her reviewed stating she was doing better.

82.    Mr. Roth left the company, and Plaintiff was given a new supervisor; however, Plaintiff's male co-workers continued to harass her and treat her differently because she is a woman.

83.    Plaintiff's male co-workers continued to falsely blame her for issues and make false statements about her performance.

84.    The discriminatory and hostile environment got worse and in or around August 2015, Plaintiff had medical issues and had to be off from work.

85.    Plaintiff returned to work after one week and her male co-workers started saying she was crazy and made fun of her.

86.    Plaintiff had been treated by one of the company's doctors and her private doctor.  Both doctors determined that Plaintiff was working in a hostile environment and requested Plaintiff be moved.

87.    Defendant's own EAP Psychologist, cited and reported to Defendant there was a need to move Plaintiff from the body shop due to the hostile work environment.

88.    Defendant did not follow the instructions of the EAP Psychologist and Plaintiff was not moved.

89.    In or around September 2015, Plaintiff was unjustly suspended when a male co-worker, Wesley Booth, screamed at her while they were working.

90.    Mr. Booth had been harassing Plaintiff for several months because of her gender.

91.    There was no reason for Mr. Booth to yell at Plaintiff and he did not treat the male employees in the same manner.

92.    Plaintiff asked Mr. Booth what was wring with him and why he was screaming at her.

93.   Mr. Booth continued to scream at Plaintiff.

94.   Plaintiff tried to stop Mr. Booth from screaming at her and when he would not stop, Plaintiff yelled back at him.

95.   Plaintiff did not get in Mr. Booth face, and Plaintiff's actions were not hostile.

96.   Plaintiff again asked to be moved to another area.

97.   Plaintiff was suspended for three weeks and no action was taken against Mr. Booth.

98.   After Plaintiff suspension, on or about October 23, 2015, she met with Team Relations Manager, Zina Cooper and Group Leader, Steve Slough.

99.   Plaintiff was asked to sign a document stating she used threatening, insulting and abusive language.

100.   Plaintiff refused to sign the document because the allegations were false.

101.   Later on or about October 23, 2015, David Olive from Human Resources called Plaintiff and terminated her for refusing to sign the document containing false accusation.

102.   After Plaintiff's termination, she wrote a letter to the CEO, Jason Hoff, informing him that she would sign the document and put her response on the document.

103.   Plaintiff was not rehired and was not allowed to sign the document with her response.

104.   Plaintiff avers that Defendant has a history of discriminating against female maintenance employees in the body shop.

105.   Kristie Garduno, female maintenance employee, moved to assembly from the body shop because of the discrimination, harassment and hostile environment.

106.   Ms. Garduno filed an EEOC Charge, and the male employees that discriminated against Ms. Garduno, harassed Mr. Garduno, and created a hostile working environment are still employed with Defendant.

107.   Defendant subjected Plaintiff to adverse treatment, harassment and discrimination with respect to the terms and conditions of her employment, including, but not limited to terminating Plaintiff because of her gender, female.

108.   Plaintiff's gender was a motivating factor in Defendant's unlawful and adverse treatment of Plaintiff.

109.   Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

110.   Defendant upon information and belief has a habit and/or practice of discriminating against female employees.

111.   Defendant's illegal discriminatory, harassing and adverse actions

injured Plaintiff.

112. Defendant failed to train its employees on its purported antidiscrimination/antiharassment policies and reporting procedures.

113. Defendant's dissemination of any antidiscrimination/antiharassment policies and reporting procedures has been ineffective.

114. Plaintiff has been directly affected by the discriminatory and harassing practices described in this Complaint.

115. Defendant's conduct and the conduct of its employees was so severe or pervasive as to create a hostile working environment to which Plaintiff was subjected.

116. Defendant knew or should have known of the gender discrimination and harassment Plaintiff was forced to endure.

117. Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the gender discrimination and harassment/hostile environment Plaintiff was forced to endure.

118. Defendant condoned and tolerated discrimination, harassment and other adverse actions toward Plaintiff.

119. Defendant's actions are in violation of Title VII of the "Civil Rights Act of 1964," as amended.

120. The Plaintiff has no plain, adequate or complete remedy at law to

redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

121.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.     Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended;

b.     Grant Plaintiff a permanent injunction enjoining Defendant's, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended;

c.     Grant Plaintiff an Order requiring Defendant make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs;

and

      d.     Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUINT TWO

## STATEMENT OF PLAINTIFF'S TITLE VII RETALIATION CLAIMS

122. Plaintiff adopts and realleges paragraphs one (1) through one hundred twenty-one (121) as if fully set forth herein.

123. Plaintiff, Valerie Bethune is female.

124. Plaintiff began working for the Defendant on or about June 25, 2012 as a Maintenance Team Member (Maintenance Technician-Electrical and Mechanical).

125. Plaintiff was terminated on or about October 23, 2015.

126. Plaintiff was originally hired to work shop 166, but in or around 2013 Plaintiff was moved to shop 205.

127. When Plaintiff moved to shop 205, she was the only female employee.

128. The male employees in shop 205 harassed Plaintiff and treated Plaintiff differently because she is female.

129. The male employees refused to help train Plaintiff and would blame

her for issues that were not Plaintiff's fault. The male employees would not communicate with Plaintiff and were hostile toward Plaintiff.

130. In or around June 2014, Plaintiff complained to her supervisor and Group Leader, Patrick Roth.

131. Plaintiff was treated differently than the male employees and her robot was taken away.

132. Plaintiff complained that she was the only woman in that part of the plaint and that she was being treated differently.

133. In or around June 2014, Plaintiff also complained to Human Resources and spoke with Zina Cooper, Team Relations Manager and Teresa Works.

134. Plaintiff complained to Ms. Cooper and Ms. Works that she was being treated differently because she is a woman and that she was working in a hostile environment.

135. In or around June 2014, Plaintiff also complained to Wade Smith, her former boss.

136. Plaintiff complained to Mr. Smith that she was being treated differently because she is a woman. Plaintiff believed Mr. Smith talked to her current supervisor, Patrick Roth, about her complaints of discrimination.

137. After Plaintiff's complaints of gender discrimination in or around

June 2014, she was unjustly disciplined and written up.

138.   The write up was later withdrawn because it was unjust and retaliatory.

139.   Ms. Cooper in Human Resources informed Plaintiff that the write up would be withdrawn, but would still be in her file as a "note" not a corrective action.

140.   Also after Plaintiff complained to her supervisor Mr. Roth, he gave her a bad performance evaluation.

141.   Plaintiff had never received a bad performance evaluation, as her performance was good.  Plaintiff's performance was so good that she was one of two Mechanical Joining Specialist sent to Germany.

142.   Plaintiff received a bad performance review in retaliation for her complaints.

143.   Plaintiff complained to Erick Tiefenthaler, Manager and Teresa Works, Human Resources about the bad review Mr. Roth gave her and informed them that she received the bad review because of her complaints.

144.   Plaintiff's performance reviews were not changed, but notes were placed on her reviewed stating she was doing better.

145.   Mr. Roth left the company, and Plaintiff was given a new supervisor; however, Plaintiff's male co-workers continued to harass her and treat her

differently because she is a woman.

146.   Plaintiff's male co-workers continued to falsely blame her for issues and make false statements about her performance.

147.   The discriminatory and hostile environment got worse and in or around August 2015, Plaintiff had medical issues and had to be off from work.

148.   Plaintiff returned to work after one week and her male co-workers started saying she was crazy and made fun of her.

149.   Plaintiff had been treated by one of the company's doctors and her private doctor.   Both doctors determined that Plaintiff was working in a hostile environment and requested Plaintiff be moved.

150.   Defendant's own EAP Psychologist, cited and reported to Defendant there was a need to move Plaintiff from the body shop due to the hostile work environment.

151.   Defendant did not follow the instructions of the EAP Psychologist and Plaintiff was not moved.

152.   In or around September 2015, Plaintiff was unjustly suspended when a male co-worker, Wesley Booth, screamed at her while they were working.

153.   Mr. Booth had been harassing Plaintiff for several months because of her gender.

154.   There was no reason for Mr. Booth to yell at Plaintiff and he did not

treat the male employees in the same manner.

155.   Plaintiff asked Mr. Booth what was wring with him and why he was screaming at her.

156.   Mr. Booth continued to scream at Plaintiff.

157.   Plaintiff tried to stop Mr. Booth from screaming at her and when he would not stop, Plaintiff yelled back at him.

158.   Plaintiff did not get in Mr. Booth face, and Plaintiff's actions were not hostile.

159.   Plaintiff again asked to be moved to another area.

160.   Plaintiff was suspended for three weeks and no action was taken against Mr. Booth.

161.   After Plaintiff suspension, on or about October 23, 2015, she met with Team Relations Manager, Zina Cooper and Group Leader, Steve Slough.

162.   Plaintiff was asked to sign a document stating she used threatening, insulting and abusive language.

163.   Plaintiff refused to sign the document because the allegations were false.

164.   Later on or about October 23, 2015, David Olive from Human Resources called Plaintiff and terminated her for refusing to sign the document containing false accusation.

165.  After Plaintiff's termination, she wrote a letter to the CEO, Jason Hoff, informing him that she would sign the document and put her response on the document.

166.  Plaintiff was not rehired and was not allowed to sign the document with her response.

167.  Plaintiff avers that Defendant has a history of discriminating against female maintenance employees in the body shop.

168.  Kristie Garduno, female maintenance employee, moved to assembly from the body shop because of the discrimination, harassment and hostile environment.

169.  Ms. Garduno filed an EEOC Charge, and the male employees that discriminated against Ms. Garduno, harassed Mr. Garduno, and created a hostile working environment are still employed with Defendant.

170.  Plaintiff suffered additional adverse actions in retaliation for her complaints and protected activity.

171.  Defendant has a habit and/or pattern of retaliation.

172.  Defendant subjected Plaintiff to adverse treatment, harassment and retaliation with respect to the terms and conditions of her employment, including, but not limited to terminating Plaintiff in retaliation for her complaints and protected activity.

173.   Plaintiff's complaints and protected activity were a motivating factor in Defendant's unlawful and adverse treatment of Plaintiff.

174.   Defendant upon information and belief has a habit and/or practice of retaliating against female employees.

175.   Defendant's illegal retaliatory, harassing and adverse actions injured Plaintiff.

176.   Defendant failed to train its employees on its purported antiretaliation policies and reporting procedures.

177.   Defendant's dissemination of any antiretaliation policies and reporting procedures has been ineffective.

178.   Plaintiff has been directly affected by the retaliatory practices described in this Complaint.

179.   Defendant's conduct and the conduct of its employees were so severe or pervasive as to create a retaliatory harassing working environment to which Plaintiff was subjected.

180.   Defendant knew or should have known of the retaliation Plaintiff was forced to endure.

181.   Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the retaliation Plaintiff was forced to endure.

182.   Defendant condoned the illegal retaliation.

183.   Defendant's retaliatory actions discouraged employees from complaining and engaging in protected activity.

184.   Defendant's actions were and continue to be malicious and Plaintiff has been harmed.

185.   Defendant's actions were and continue to be in reckless disregard of Plaintiff's federally protected rights.

186.   Plaintiff has been unjustly harassed, unjustly disciplined, denied pay, and retaliated against, and terminated for engaging in a protected activity, and that there is a causal link between Plaintiff engaging in a protected activity and the adverse actions she suffered, including her termination.

187.   Plaintiff has been retaliated against in violation of Title VII of the "Civil Rights Act of 1964," as amended.

188.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory judgment is her only means of securing adequate relief.

189.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.      Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended;

b.      Grant Plaintiff a permanent injunction enjoining Defendant's, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended;

c.      Grant Plaintiff an Order requiring Defendant make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.      Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

CYNTHIA FORMAN WILKINSON
State Bar ID No:  ASB-9950-L68C
Attorney for Plaintiff

**OF COUNSEL:**

**WILKINSON LAW FIRM, PC**
215 N. Richard Arrington Jr. Blvd.
Suite 200
Birmingham, Alabama 35203
Tel.:  (205) 250-7866
Fax:  (205) 250-7869
E-mail: wilkinsonefile@wilkinsonfirm.net

**PLAINTIFF'S ADDRESS:**

Ms. Valerie Bethune
c/o WILKINSON LAW FIRM, PC
215 North Richard Arrington, Jr. Blvd.
Suite 200
Birmingham, Alabama 35203

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**

Mercedes-Benz U.S. International, Inc.
c/o Edward R. Christian
P.O. Box 100
Tuscaloosa, AL 35403